The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner, with some modification. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case.
2. The parties are properly before the Industrial Commission.
3. The parties were subject to and bound by the provision of the North Carolina Workers' Compensation Act at all relevant times.
4. Travelers Insurance Company was the carrier on the risk.
5. The employee-employer relationship existed between the parties at all relevant times.
6. The plaintiff's average weekly wage was $427.28, which yields a compensation rate of $284.86 per week, based upon the Form 22, Wage Chart which was stipulated by the parties.
7. The issue for determination is whether the plaintiff contracted a compensable occupational disease, and if so, to what benefits may he be entitled under the Act.
8. The parties stipulated seventy-six pages of medical reports, two videotapes of job duties, nine pages of Plaintiff's Answers to Defendants' Interrogatories, and the I.C. Forms into the record.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. On February 15, 1993, the plaintiff was a thirty year old married male. He was employed as a machine operator with the employer, which manufactured glass tops for furniture and tables. The plaintiff operated the shape grinders and cutting machine.
2. The plaintiff's duties included lifting pieces of glass weighing seventy-five pounds or less by hand, using a hoist to lift heavier pieces of glass, placing glass on vertical tables where they were shaped with diamond and felt wheels, placing the shaped glass on a conveyor roller, using a sharpening stone on the diamond wheel, using a small hammer to break out scored pieces of glass into shapes, and scoring pieces of glass with a small knife.
3. The plaintiff used his hands to score, break, and lift the pieces of glass which required him to exert some pressure with his hands in these activities. The plaintiff would also clip corners off of pieces of glass by manually scoring the glass and snapping the piece of glass by flexing the wrist. The plaintiff generally operated four to six machines per shift.
4. In the six months prior to December of 1994, the plaintiff complained to his supervisor of bilateral hand and arm pain and numbness.
5. On December 15, 1994, the plaintiff experienced a pop in his right wrist as he was snapping off a piece of glass. He was referred to the Medical Arts Clinic by his employer and was seen by Dr. De La Garza, who provided a splint and ordered light duty work.
6. Dr. De La Garza sent plaintiff to Dr. Pekman on January 10, 1995 for possible carpal tunnel syndrome.
7. On January 17, 1995, the plaintiff was seen at Hickory Orthopedic Center by Dr. Mark McGinnis, at which time plaintiff related a history of bilateral hand pain of eight months in duration. Nerve conduction studies were ordered, and following which plaintiff was diagnosed with bilateral carpal cubital and radial tunnel syndromes. A course of hand therapy was taken.
8. After plaintiff's symptoms worsened, Dr. McGinnis recommended surgery on June 26, 1995.
9. Dr. McGinnis performed right carpal tunnel release surgery and right ulnar nerve anterior subcutaneous transposition surgery on plaintiff's elbow on July 3, 1995. On July 11, 1995, Dr. McGinnis found plaintiff to have a full range of motion in the right elbow.
10. On July 26, 1995, the plaintiff underwent the same surgical procedures on his left elbow and wrist. Thereafter, plaintiff participated in work hardening at the Frye Workplace.
11. On October 31, 1995, Dr. McGinnis suggested that the plaintiff seek other work in an occupation that did not require as much strenuous, repetitive use of his arms. The plaintiff advised his doctor that he had enrolled in welding classes.
12. On February 23, 1995, the plaintiff was referred to Dr. Stephen Naso, a hand surgeon, for evaluation of his condition.
13. On August 1, 1996, Dr. McGinnis found the plaintiff to be at maximum medical improvement, and rated him as retaining a ten percent permanent impairment in each hand.
14. The plaintiff returned to light duty work on September 27, 1995.
15. On October 31, 1995, plant manager Coyte Martin advised the plaintiff that there would be no further work available unless the lifting restriction was lifted. However, Dr. McGinnis did not change the restriction, and plaintiff was not provided with other work by the employer.
16. After a reasonable job search, the plaintiff found work as a welder on November 27, 1995, where his average weekly wage was $420.00.
17. The repetitive wrist flexion and pressure required by the break-out job were contributing factors in the development of plaintiff's bilateral compressive neuropathy occupational diseases. Plaintiff's duties placed him at an increased risk than the general public for acquiring bilateral carpal and cubital tunnel syndromes.
18. Although the plaintiff testified that he experienced some discomfort in welding, there is insufficient evidence of record that the welding job constituted an aggravation of the compression neuropathies.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The plaintiff contracted a compensable occupational disease on or about December 15, 1994. N.C. Gen. Stat. § 97-53(13).
2. As a result of the compensable occupational disease, the plaintiff is entitled to temporary total disability compensation at the rate of $284.86 per week for the period from February 10, 1995 through September 26, 1995, and from November 1, 1995 through November 26, 1995. N.C. Gen. Stat. § 97-29.
3. The plaintiff has reached maximum medical improvement and has been assigned a functional impairment rating of ten percent (10%) to both arms, and the plaintiff has returned to work earning less than his pre-injury wages with the defendant-employer. Therefore, plaintiff must make an election of benefits for either permanent partial disability compensation under N.C. Gen. Stat. § 97-31 or temporary partial disability compensation at the rate of two-thirds of the difference between his pre-injury wages and his post-injury wages under N.C. Gen. Stat. § 97-30. Plaintiff can elect the compensation that will provide the greater remedy.
4. If the plaintiff elects benefits under N.C. Gen. Stat. § 97-31, he is entitled to permanent partial disability compensation at the rate of $284.86 per week for forty-eight weeks as a result of the ten percent (10%) rating to the both arms. N.C. Gen. Stat. § 97-31.
5. If the plaintiff elects benefits under N.C. Gen. Stat. § 97-30, he is entitled to temporary partial disability compensation at the rate of two-thirds of the difference between $427.28 and his post injury wages for up to 300 weeks from the date of injury. N.C. Gen. Stat. § 97-30.
6. The plaintiff is entitled to have the defendants pay for medical expenses incurred, or to be incurred, as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. § 97-2(19).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, the defendants shall pay temporary total disability compensation to the plaintiff at the rate of $284.86 per week for the period from February 10, 1995 through September 26, 1995, and November 1, 1995 through November 26, 1995. Said compensation has accrued and shall be paid in a lump sum.
2. Subject to a reasonable attorney's fee herein approved and the proper election of benefits by the plaintiff, the defendants shall pay permanent partial disability compensation at the rate of $284.86 per week for forty-eight weeks in accordance with N.C. Gen. Stat. § 97-31 or the defendants shall pay temporary partial disability compensation at the rate of two-thirds of the difference between the pre-injury and post-injury wage in accordance with N.C. Gen. Stat. § 97-30. Such compensation as has accrued shall be paid in a lump sum.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff in paragraphs 1-2 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel.
4. Defendant shall pay all reasonable medical expenses incurred or to be incurred in the future by plaintiff as a result of his compensable injury when bills for the same have been submitted through the defendant and approved according to procedures adopted by the Industrial Commission.
5. Defendants shall pay the costs, including the expert witness fees of $300.00 to Stephen J. Naso, Jr., M.D.; $600.00 to Mark R. McGinnis, M.D.; and $200.00 to Robert P. Augustine, P.T.
This the ______ day of May 1998.
 S/ _____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _____________________ RENÉE C. RIGGSBEE COMMISSIONER
LKM/jth